I am persuaded that Ala. Code 1975, § 6-5-71(a), was clearly a temperance measure that succeeded in being enacted due to two historical events: the formation of the Alabama contingent of the Anti-Saloon League of America in 1904 and the 1906 election of Governor Braxton Bragg Comer, who used the prohibition issue to achieve his phenomenal political success. Criminal and civil legislation was enacted to restrain the business of manufacturing, selling, or distributing liquor for a profit. What is now § 6-5-71 was § 8 of the "Fuller Bill," which became Act No. 191, Ala. Acts 1909 (Special Session), pages 63-96. The title of the Fuller Bill stated that its purpose was "[t]o further suppress the evils of intemperance, and to secure obedience to and the enforcement of, and to prevent the evasion of, the laws of the State for the promotion of temperance and for the prohibition of the manufacture of and traffic in or unlawful disposition of prohibited liquors and beverages."
Section 37 of the Fuller Bill provided:
 "This act shall be liberally construed so as to accomplish the purpose thereof, which is to further suppress the evils of intemperance and secure obedience to and the enforcement of the laws of the State for the promotion of temperance and for the suppression of the . . . traffic in prohibited liquors and beverages and to prevent evasions and subterfuges by which such laws may be violated."
There is substantial evidence (evidence sufficient to withstand a motion for summary judgment) that the minor plaintiffs were children of Richard Gregory James, Sr., deceased, and were dependent upon him for their support; that the defendant, an on-premises liquor licensee, served their father alcoholic beverages while he appeared to be intoxicated, in violation of Alabama Alcoholic Beverage Control Board regulation No. 20-X-6-.02(4); and that as a proximate result of this illegal sale, their father was killed and the minor plaintiffs were deprived of their support.
 "Every . . . child . . . who shall be injured in . . . means of support . . . in consequence of the intoxication of any person shall have a right of action against any person who shall, by selling . . . to another, contrary to the provisions of law, any liquors or beverages, cause the intoxication of such person for all damages actually sustained, as well as exemplary damages."
Section 6-5-71(a) provides a cause of action for these minor plaintiffs; therefore, summary judgment should not have been entered for the defendant. Their "injury" or "damage" was the loss of their means of support and for this injury the statute allows "damages actually sustained" (i.e., compensatory damages), even though their father was killed and even though in this state wrongful death damages are ordinarily punitive only. The phrase "for all damages actually sustained" has to be interpreted as including an injury in the form of a loss of means of support. If the "selling . . . to another, contrary to the provisions of law, [of] any liquors or beverages" was intentional, then exemplary damages can also be recovered. The minor children's claims under § 6-5-71(a) are not derivative and therefore are not barred by their father's contributory negligence. A review of this Code section in its historical setting (Martin v. Watts, 513 So.2d 958, 965-92 (Ala. 1987) (Houston, J., concurring in part and dissenting in part)) causes me to believe that the Legislature intended to give children "injured in [their] means of support" a cause of action to recover the support that they lost and to allow them to recover it from those persons whose illegal sale of alcoholic beverages proximately caused their loss. This legislation was enacted for the benefit of particular members of the family and its remedy is not derivative. For other such legislation, see Boykin v. Magnolia Bay, Inc., 570 So.2d 639
(Ala. 1990). *Page 1232